WILLIAM WILLS v. THE STATE.

1. On the trial of one indicted under the act of November 12, 1866, for unlawfully removing cattle, belonging to some person unknown, from their accustomed range, a *prima facie* case of guilt is established upon proof being made that the cattle removed were estrays, or that they belonged to or were controlled by some other person. Upon such proof

being made, no presumption can arise that the accused was the owner from the mere fact of his possession.

2. Though possession of cattle, under a claim of purchase, without a written conveyance, is *prima facie* illegal, under the act of November 13, 1866, which regulates the transfer of animals, even though there may have been an actual delivery, yet this presumption may be rebutted by parol evidence of ownership, or of a right to control, or of any fact which tends to prove the absence of criminal intent, or that the offense was not theft, but a misdemeanor.

3. Upon the trial of one charged with removing stock from its accustomed range, *held*, error to instruct the jury that one acting under authority from another must know that the other had the right to give it, and that A. cannot give B. authority over stock in more than one brand.

APPEAL from Williamson. Tried below before the Hon. E. B. Turner.

*Makemson & Posey*, and *Long & Long*, for appellant.

*Geo. Clark*, *Attorney-General*, for the State.

REEVES, ASSOCIATE JUSTICE.—This is an indictment against Joseph Inman, John Cloud and W. F. Wills, for unlawfully taking into their possession certain beef steers, four in number, each of the alleged value of fifteen dollars, and for driving, using and removing the steers from their accustomed range, not being the property of either of the defendants, but the property of some person or persons to the grand jurors unknown, without the consent of the owners, and with intent to defraud the owners. Three of the steers are described in the indictment by brands, and the other by his mark without a brand.

The offense as charged in the indictment is the same as that defined by the act of November 12, 1866. (Article 2410*b*, Paschal's Digest.)

The appellant, Wills, only was tried, and being convicted he appeals, and complains, as one of the grounds of error for reversing the judgment, that the court erred in refusing the new trial, because the verdict was contrary to the evidence.

In support of this, attention is called to the indictment in the allegation that the owners of the animals therein described were unknown to the grand jury, and also to the evidence showing that these animals were estrays and were so recognized by the witnesses and others in their neighborhood.

Such being the charge and the evidence, it is contended for the appellant that the presumption would be that the steers belonged to him, he being found in possession of them.

To this it may be answered that possession of personal property is not the criterion of ownership where the law denominates it as an illegal possession.

The inquiry is, did the defendant's possession carry with it the presumption of ownership under the rules of evidence laid down in the statute?

The act of November 12, 1866 (Art. 2410e), under which the indictment was found, provides that "in any prosecution under the three preceding articles, it shall only be necessary to prove the act of killing, or destruction, or driving, using, or removing from the range, any stock not belonging to or under the control of the accused, and it shall devolve upon the accused to show any fact under which he can justify or mitigate the offense."

It must be proved that the accused did the acts with which he is charged, and that the animals were not his property or under his control. This may be done by proof that the animals were estrays, and the owner unknown, or that they belonged to or were controlled by another person other than the accused, according to the allegation in the indictment. A *prima facie* case is then made out against the accusd, and it is incumbent on him to prove any fact that would justify his acts or mitigate the offense; and until this is done there could be no presumption that the accused was the owner from the fact of his possession.

The act of November 12, 1866, above referred to, furnishes no rule of evidence under which the accused may prove his justification, or prove facts in mitigation of the offense.   The rule is to be found in the act of November 13, 1866, "to regulate the sale, alienation, removal or transfer of animals in this State, and to require butchers to report to the police court all animals slaughtered, and for other purposes."   The statute relates to the sale and purchase of the animals, and would not apply where title was acquired in a different mode.   It requires a descriptive written conveyance from the party selling to the purchaser, giving the number, marks and brands of such animals, to accompany the actual delivery of the stock, and provides that "hereafter, upon the trial of the right of property in any of the animals mentioned, or upon the trial of any person charged with theft of such animals, in any court of this State, the possession of the animals in controversy, or charged to have been stolen by the party, without the written conveyance as herein provided, shall be *prima facie* evidence against the party of the illegal possession of such animal."   (2 Paschal's Digest, Art. 7445.)

A *prima facie* case being made out against the defendant, in the absence of proof of the kind required by the statute in justification of his acts, his possession must be deemed to be illegal, and there can be no presumption that he was the owner of the animals, or that he had authority to do the acts charged against him in the indictment, without proof of ownership or authority to control the stock.   It is contended for the appellant that this was done.

The animals were proved to be estrays.   The defendants, Wills and Inman, were seen driving them in a herd of cattle along the road towards Austin.   Two of the witnesses saw the steer branded with a circle D in a herd of other cattle about three miles from Austin, and out of

the accustomed range. It was agreed on the trial that the marks did not authorize the defendant to control the J-heart and B cattle.

On the part of the defendant, it was proved by John Northington that he gave the defendant authority to use cattle branded B U and B; that he (Northington) had authority from A. P. Lee, of Lampasas county, and that he authorized the defendant to gather and sell the J-heart brand. Northington further proved, that he once owned the J-heart brand, and sold it to Cloud, and that he knows that defendant Wills had authority to use the cattle in that brand at the time he carried the cattle to Austin. W. T. Dalrymple, the clerk of the District Court of Williamson county, proved defendant Wills recorded marks and brands, showing that they were not the mark and brands of the cattle in controversy, and stating that he finds no recorded bills of sale for any of the beeves described in the indictment to defendants, Wills, Inman, or Cloud, and that neither of them have recorded bills of sale for said cattle, and that neither of the brands of the beeves described in the indictment or the mark of the one not branded is in the recorded mark or brand of either of the defendants.

It was proved for the defendant by Boyd that Inman sold Wills the beef branded circle D.

There was some conflicting evidence on the trial respecting the cattle, except the steer last mentioned. It is not certain that any of the animals were driven out of the range except the one branded circle D. But if it be admitted or proved that this animal was removed from the accustomed range, then it is insisted in the brief for defendant that the alleged purchase from Inman was a valid defense, and met the charge against him.

The act of November 12 must be construed in connection with the act of November 13, in considering this question.

Possession under an alleged purchase without a written conveyance, though there may be an actual delivery of the animal, is declared by the act of November 13 to be *prima facie* illegal. The possession in that case does not show justification or mitigation under the act of November 12, when taken in connection with the other statute above referred to. It is not, however, conclusive. The party in possession may rebut by any competent evidence the case made against him by proving that the stock belonged to him, or was under his control, though the evidence of his right may not consist in a written conveyance.

The brands are required to be recorded by the act of March 20, 1848, and until recorded are not recognized as any evidence of ownership. (Paschal's Digest, Article 4659.)

When the animals are disposed of as they run in the range by the sale and delivery of the brands and marks, it is provided by the act of November 13 that "the purchaser, in order to acquire title thereto, shall have his conveyance or bill of sale of such stock recorded in the county clerk's office, in a book to be kept by him for that purpose, and such sale or transfer shall be noted on the record of original marks and brands in the name of the vendee or purchaser."

It will be seen that these provisions relate to the title or ownership of the stock, prescribing the rule of evidence by which title shall be shown in the cases provided for. That is the extent to which they go.

The possession may be unlawful or wrongful, yet it cannot be supposed that it is the intention of the statute, when a party is charged with crime, that his evidence should be restricted to proof of title, or that he may not in his defense rely upon such facts and circumstances as may tend to prove that there was no criminal intent, or that the offense was not theft, but a misdemeanor.

Upon a trial of the right of property in a civil suit, where the issue is that of title or not under a purchase, the rule would be different, and requires the written conveyance.

The act of November 12 (Article 2410*b*) makes the removing of stock from the accustomed range, under the circumstances and with the intent specified in the statute, theft, and punishable by confinement in the penitentiary, or by pecuniary fine, or by both fine and imprisonment, at the discretion of the court and jury.

The next article (2410*c*) makes the same act and other acts of the accused party, when done without a fraudulent intent and under such circumstances as do not constitute theft, a misdemeanor, and punishable by fine not exceeding double the value of the stock.

It is made theft or misdemeanor not as defined by other provisions of the code, but a theft or a misdemeanor of the animals specified in the statute, under the circumstances and with the intent, or without the intent, as therein set forth.

Where the degree of the punishment depends upon the value of the stock, the value must be proved, that it may appear to which degree the offense belongs. It is otherwise where the value is not material to the punishment, as in theft of the animals.

The allegation in the indictment, that the names of the owners of the animals are unknown, comes within the exception requiring the names to be averred.

They were shown to be estrays, and though the owners were unknown, they have still a property in the stock which was the subject of larceny, and the animals may be disposed of as provided by the stray laws, if the owners are not known.

If there had been no error in the charge of the court to the jury, we would hesitate before disturbing the verdict on the ground that the finding was contrary to the evi-

dence.   And it remains to inquire whether the charge is in accordance with the rules here laid down.

If the offense was theft, and the accused could not have been convicted by the jury of the misdemeanor under the evidence, it was not necessary to do more than charge upon the law applicable to the alleged theft, without regard to the value of the stock.   It is only necessary to prove value where the evidence would support the verdict for a misdemeanor, and then the value must be proved, as the fine has respect to the value of the stock.

We think the jury should have been instructed, that though the failure to produce a written conveyance was *prima facie* evidence that defendant's possession was illegal, yet it was not conclusive.   The charge may have made the impression that the inquiry should be confined to the bill of sale only.

The same objection applies to the charge that a man claiming to act under the authority of another must know that the other had the right to give it, and that A. cannot give B. authority over stock in more than one brand, etc.

Whatever may be the correct interpretation of the statute on the trial of the right of property in a civil suit, where a party is charged with theft he may give in evidence the facts and circumstances of his claim, or the authority under which the act was done, as showing his intention, for the consideration of the jury.   And though it may not prove title or ownership where the authority was given without right, and where the brand was not recorded according to the statute, it may be material in rebutting the criminal intent.

For the same reason, we think the third and fourth charges asked by the defendant and refused by the court should have been given.

It was a question of fact for the jury whether the defendant acted in good faith, believing that he had authority to control the stock or otherwise.

As the case will be reversed on these grounds, it will not be necessary to review the rulings of the court on the other grounds complained of. But it may be observed that there is no apparent error in refusing the new trial on account of the newly-discovered evidence as shown by the affidavits ; nor that the defendant was put upon trial so soon after indictment found. He made no application for a continuance; and as to the witness Robinson, he knew of the alleged materiality of his testimony before the trial. He must have known of the evidence of the Glenns, as they say they were present when the J-heart steer was turned out of the herd, at their mother's residence.

But, for the errors noticed before, the case is reversed and remanded for further proceedings.

REVERSED AND REMANDED.