[Nos. 1501 and 1502.]

FELIPE FLORES *v.* THE STATE.
TOMAS BERNAL *v.* THE STATE.

1. THEFT—CIRCUMSTANTIAL EVIDENCE—CHARGE OF THE COURT.—When circumstantial evidence is alone relied upon to establish the inculpatory facts, the failure of the court to charge the law controlling such evidence is fatal error, and is peremptory cause for reversal.
2. SAME.—Having failed in the general charge to embrace the law of circumstantial evidence in a case where the inculpatory facts depended upon such evidence, it was error to refuse a special charge embodying a correct enunciation of such law, asked by defendant.
3. SAME—POSSESSION OF RECENTLY STOLEN PROPERTY—CHARGE OF THE COURT.—While the statute provides that possession of an animal recently stolen without a written bill of sale specifically describing the animal shall be deemed *prima facie* evidence of illegal possession, it is error to so charge in the abstract. The trial court should instruct the jury that, though the failure to produce a written conveyance is *prima facie* evidence of illegal possession, yet it is not conclusive, and may be rebutted by competent evidence.

APPEAL from the District Court of Webb. Tried below before the Hon. J. C. Russell.

The appellants were indicted for the theft of a horse, the property of Felix Valdez, in Webb county, Texas, on the third day of September, 1882. They were tried separately, convicted, and the appellant Flores was awarded a term of five years, and the appellant Bernal a term of six years, in the penitentiary.

Felix Valdez testified, for the State, that on the third day of September, 1882, he lived in the field of Antonio Quintanilla,

about one mile distant from Laredo, Texas. He turned his horses into the field on that night about eight o'clock, with hobbles on their feet. He could not find his horses next morning. He found a hole in the fence which was not there the night before, and discovered that the horses went out of the field through that hole. There is a difference between the track of a hobbled and that of an unhobbled horse, and the tracks going out at the hole were those of unhobbled horses. The witness followed the track and found the horses in the old court house in Laredo. The hobbles which were on their feet the night before were then around their necks. These horses were taken from the field of the witness without his consent.

Cross-examined, the witness stated that the fence around the field was of brush. He saw nothing more of his horses on the night of the third of September, after he hobbled them. He saw them first next day in Laredo. A "labor" is a corn field. This labor was one and a half miles from Laredo. The horse for the theft of which the defendants were on trial was the property of the witness, though he has no bill of sale. The witness did not know of his own knowledge that the defendants took the horse. He had never seen the horse in possession of the defendants.

H. Garcia testified, for the State, that he arrested the defendants on the night of September 3, 1882, with the horses in their possession. Bernal had one and Flores two horses, leading them with ropes. The two led by Flores were tied together with three small ropes. Those ropes had been used as hobbles. When the witness arrested the defendants he asked them where they were going with the horses, and they said they were taking them to the "vario" or suburbs of Laredo. The witness confined them in jail, and on the next morning the horses were claimed by and turned over to Valdez.

Cross-examined, the witness stated that he arrested the defendants near the old graveyard on the outskirts of Laredo. The defendants did not claim the horses as their property, nor did they say more about them than that they were taking them to town. The witness did not then know to whom the horses belonged, but next day Valdez claimed one as his. When arrested the parties were going in an opposite direction from Quintanilla's ranch. After a further rigid cross-examination, the witness stated that the defendants told him, when he arrested them, that they were just from the theatre.

Tomas Arispe testified that he, Boyard and Garcia were at the graveyard in Laredo about two o'clock on the morning of September 3, 1882.   They there met the defendants with the horses, and the marshal, Garcia, asked them where they were going. They said they were going to the "vario."   They were then arrested and sent to the court house.

The testimony of Boyard, for the State, was a substantial corroboration of Arispe.

A. Brune, deputy sheriff, testified that after a trial of the right of property to the horses, under the direction of the justice of the peace, he turned them over to Valdez, but did not know of his own knowledge that they actually belonged to Valdez.

Recalled, Garcia testified that the defendants made no explanation to him of their possession of the horses when they were arrested, and said no more to him than that they were taking them to the "vario."

Camillo Valensuelo testified, for the defense, that he was with Garcia and other policemen when they arrested the defendants with the horses.   When Garcia asked them about the horses, they said they had found them on the road astray, and were taking them to the suburbs as estrays.

Petra Martinez testified that the reputation of Flores for honesty was good.   Benigno and Guadalupe Becerra testified to the same effect in behalf of Bernal.   These last two witnesses testified also that they saw the defendants at a Mexican theatre in Laredo on the night of the alleged theft, and talked with them there until the theatre broke up, which was about twelve o'clock.

The motion for new trial attacked the sufficiency of the evidence in both cases, the charge of the court given in both cases, and in the case of Flores the action of the court in refusing charges asked.

*C. A. McLane*, for the appellants.

*J. H. Burts*, Assistant Attorney General, for the State.

WHITE, P. J.    Former appeals in each of these two cases were disposed of by us on the tenth of January, 1883, at the present term, and the judgments were reversed and prosecutions dismissed, because the indictments charged no offense against the law.   Since then, the parties have both been again tried and

convicted upon new indictments, and now present us with their second appeals.

Again the judgments must be reversed for defects in the charge of the court, in omitting and refusing to charge upon the law of circumstantial evidence. Defendants were not taken *in flagrante delicto*, that is, they were not seen to steal the horses. When arrested, their crime, if any had been committed by them, was already complete, though it may have been only a short time after and but a short distance from the place where the animals were stolen. Being found in possession of property so recently stolen was itself but a circumstance tending to show guilt. When arrested and asked what they were doing with the horses, they did not confess that they had stolen them; neither did they claim them as their property. They only said they were taking them to "*vario*," which means, as stated by the witness, the precinct or suburbs of the city. There was indeed no direct or positive proof of their guilt; all the evidence adduced against them was circumstantial in character.

This being so, it devolved upon the court to charge the law relative to such testimony, and a failure to so charge in such cases has been so repeatedly held by this court to be reversible error that it would be but supererogation to cite authorities. The charge given did not embrace the law in this respect, and a correct enunciation of it was submitted in the special requested instructions which were asked for defendant, and which were refused by the court.

Again, in the sixth paragraph of the charge, the jury were instructed as follows, viz.: "If you find from the evidence that the defendant was in possession of said horse, and had no bill of sale or written transfer specifically describing the same, then his possession of said animal was *prima facie* illegal." It is true that the rule here announced is so declared by statute, but to charge it abstractly is error. In the case of *Garcia* v. *The State*, appealed from Webb county and tried by the same learned judge who presided below at these trials, with regard to a similar charge, it was said: "We think the court should have instructed the jury that, though the failure to produce a written conveyance was *prima facie* evidence that defendant's possession was illegal, yet it was not conclusive, and might be rebutted by competent evidence. The charge, as it was given, may have made the impression upon the minds of the jury that the inquiry should be confined to the question as to whether or

not the defendant had a written conveyance. (*Wills* v. *The State,* 40 Texas, 69; 12 Texas Ct. App., 335.)

For errors in the charge of the court the judgments in each of these cases is reversed, and the causes again remanded for new trials.

*Reversed and remanded.*

Opinion delivered March 22, 1883.