[Opinion delivered March 13, 1886.]

---

[No. 2043.]

### Dick Mackey *v.* The State.

1. THEFT — INDICTMENT — OWNERSHIP.— An indictment for theft is sufficient as to the allegation of ownership if it charges that the property stolen was the property of some person to the grand jurors unknown.
2. SAME — PRACTICE — EVIDENCE.— If the indictment avers that the owner was unknown, and the evidence shows that the animal was an estray, no presumption of ownership arises from the defendant's possession, nor that such possession was lawful, but he must establish its legality.
3. SAME — POSSESSION.— It is a well established principle that animals upon their accustomed range are in the possession of their owner, and it is equally well established that the want of the owner's consent to the taking of the animal may be fully established by circumstantial evidence.
4. SAME — CIRCUMSTANTIAL EVIDENCE — CHARGE OF THE COURT.— It is only when the inculpatory evidence is wholly circumstantial that the trial court is required to instruct the jury upon that character of evidence.

APPEAL from the District Court of Navarro. Tried below before the Hon. L. D. Bradley.

The conviction in this case was for the theft of a steer, the property of some person to the grand jury unknown, in Navarro county, Texas, on the 18th day of May, 1883. A term of two years in the penitentiary was the penalty assessed against the appellant.

A. W. McFall was the first witness for the State. He testified that he was the hide and animal inspector of Navarro county in 1883. On or about June 16, 1883, W. H. Barth, a butcher in Corsicana, called upon witness to inspect a steer, which he claimed to have purchased from the defendant. He gave the witness, from the bill of sale executed by the defendant, the mark and brand of the animal which the bill of sale purported to convey, and, with the memoranda from the said bill of sale, witness repaired to the slaughter-pen of the said Barth to make the inspection. The animal

designated by Barth as the animal he had purchased from the defendant was a brown, smooth-haired three-year-old steer. That animal did not correspond with the description set out in the bill of sale. The bill of sale set out a brand, whereas the animal was unbranded. The mark on the right ear of the animal corresponded with the mark as set out in the bill of sale, but the mark in the left was materially different from that set out in the bill of sale. Witness, upon discovering the discrepancies between the description set out in the bill of sale and the animal, immediately sent word to the defendant to come and see him. The defendant did not come to see witness, and witness again sent him word to come and see him before he placed the matter before the grand jury. The defendant did not call upon witness until after the indictment was returned by the grand jury. When he did call upon the witness, he claimed to have bought the animal from one Jim Henderson, and exhibited a bill of sale signed with the name "Jim Henderson." That instrument was very awkwardly drawn, and very poorly written. It described the ear-marks of the animal as they were set out in the bill of sale the defendant executed to Barth, and the brand as a figure 7 or figure 9 in a diamond. The witness returned him the bill of sale, with the remark that it would not do. Shortly after this interview the defendant disappeared. Witness inspected the animal closely before it was killed and afterwards; and failed to find any trace of a brand. The defendant had been handling cattle and purchasing for the markets a long time.

Cross-examined, witness stated that he had no idea to whom the animal belonged. The difference between the mark on the left ear of the steer, and that mark as given in the bill of sale, though material, was slight. In short, an under-bit represented in the bill of sale was not in the left ear of the animal. The defendant had been a long time engaged in buying cattle for the butchers of Corsicana.

Jim Henderson testified, for the State, that he owned a stock of horses and cattle in Navarro county. His recorded brand, as shown by the records of Navarro county, was 7 inclosed in a diamond. His mark was a crop and two splits in the left and two splits in the right ear. Witness left Corsicana in 1881, and had since then resided in Waco, Texas. When he left Corsicana, witness placed his stock of horses and cattle in the hands of the defendant, and requested him to sell them, and authorized him to manage and control them, brand them, mark them, and, when making sales, to execute bills of sale. The cattle, when witness left Navarro county, consisted of eight

head; three cows, three yearlings and two calves. The two calves were not then branded. One of the yearlings was then in the mark and brand of F. J. Barrell, the said brand being BX and the said mark a crop off each ear. · That animal was in that brand when witness got it. The other two yearlings were in witness's mark and brand. One of the three cows was nearly ready to drop a calf when witness left Navarro county for Waco. Witness had given defendant full verbal authority to sell, manage and control his stock, but had never given him written authority or executed a bill of sale to him. The witness had paid no attention to his stock since he placed them in defendant's charge, and did not know what had become of them.

Cross-examined, witness said that he had written to the defendant from Waco about his cattle. The defendant paid witness $46 on account of the stock, about three years before this trial. Defendant knew witness's cattle perfectly well, and helped witness brand the only two that were in the 7-diamond brand. Witness had no cattle in his brand which were not also in his mark. Witness had heard nothing of this charge against defendant when defendant paid him the $46.

N. B. Edins testified, for the State, that he arrested the defendant upon this charge soon after the indictment was returned against him. The defendant was absent from Corsicana a few days after the indictment was presented, but voluntarily returned. McFall pointed out to the witness the animal which the defendant was charged to have stolen. Witness examined him closely, but failed to discover a brand. Jim Henderson's cattle ranged near and east of Corsicana.

W. H. Barth testified, for the State, that he was a butcher and had conducted his business in Corsicana for a long time. He had known the defendant for at least ten years, during which time defendant had worked for him, buying cattle, etc. On or about June 16, 1883, the defendant made him a bill of sale for the brown three-year-old steer involved in this prosecution. Witness paid him $25. The defendant brought that animal to the witness's slaughter-pen, and sold him to the witness on the said 16th day of June, 1883. The witness made no examination of the marks and brands of the steer. After he paid for the steer it was butchered; but before having it killed he sent for McFall, the inspector, and had the animal inspected. Witness gave McFall the bill of sale which was executed to him by the defendant. At the time of this transaction the defendant was working for Haley. The witness at this point pro-

duced a " Butcher's Report," which he said was made out for him by C. Parker, who was then in his employ. The statement of June 16, 1883, in that report was taken from witness's bill of sale book, and was correct. The bill of sale book mentioned could not be found, and witness was of impression that it had been destroyed by fire. The item in the report, however, was correct. The report referred to recited the purchase of the brown steer, with mark and brand described, from Dick McKie, on the 16th day of June, 1883.

Cross-examined, the witness stated that he purchased the steer in question from the defendant about 10 o'clock. One Columbus Parker, now dead, went with defendant to get up the steer. They went east from Corsicana, and in about one hour later returned with the animal. Defendant executed the bill of sale in the Bismarck saloon at about 11 o'clock, at which time witness paid him the money. Parker said to defendant: " You are flush, and must treat." Defendant declined to treat, upon the plea that the money did not belong to him. He said that the steer belonged to a man whose name he gave, but which the witness could not remember. No one was present except witness, defendant and Parker, deceased. The witness had known the defendant for many years in Corsicana, and knew that during that time he had sustained a good reputation for honesty and fair dealing. Witness's butcher reports were made every three months. Parker and others who worked for him had made such reports for witness.

R. N. Melton testified, for the State, that he heard of the defendant selling the brown steer involved in this prosecution, a few days after the transaction. An unbranded brown steer, past three years old, ran with the witness's cattle, a mile or a mile and a half east of Corsicana. Witness did not remember the ear-marks of that animal. It had run with the witness's cattle since it was about a year old. Shortly after that animal took up with witness's cattle, witness asked the defendant if he knew to whom it belonged. He replied that he knew nothing about it. Just before this charge was preferred against the defendant, defendant came to witness and asked him what had become of that animal. Witness replied that he did not know that the animal was missing. It was the recollection of the witness that the defendant said in that conversation that he had bought that animal. On that same evening, or on the next day, the witness saw the animal with his cattle, but it disappeared a few days later. A few days afterwards, the witness heard of this indictment against the defendant. That steer had never reappeared on the range. The animal was not in view on either occa-

sion when witness and defendant spoke of it, but it was well under-stood by both to be the animal referred to. The witness had no idea to whom the animal belonged. The State closed.

S. S. Arthur testified, for the defense, that he had known the defendant as a resident of Corsicana for eight or ten years, during which time his reputation for honesty and fair dealing had been "pretty fair." Some time in 1882 defendant brought the witness a letter, purporting to have been written from Waco by one Jim Henderson, and got witness to read it to him. The court refused to permit the witness to state the contents of that letter.

Pat Fitzpatrick testified, for the defense, that he had known the defendant, and worked with him at the butcher business in Corsi-cana for years, during which time the defendant had sustained a good reputation for honesty and fair dealing. At the request of McFall and others, witness, with Lewis Eliot and Columbus Parker, examined the hide of the animal alleged to have been stolen by the defendant. They found a scar of some kind on it, but were unable to decide whether or not it was a brand. Defendant made to witness, on the day or the day after he was charged with this theft, a statement concerning his possession of this animal. That statement was excluded by the court.

J. P. Haley testified, for the defense, that he had known the defendant for years, and knew that his reputation in Corsicana, for honesty and fair dealing, was good. The witness was not permitted by the court to repeat a statement made to him by defendant, a few days after his indictment, explanatory of his possession of the animal.

Lewis Eliot, being introduced by the defense, testified that he had known defendant since his early youth, and that defendant had always borne a good reputation for honesty and fair dealing.

The motion for new trial raised the questions discussed in the opinion.

*W. J. M'Kie,* for the appellant.

*J. H. Burts,* Assistant Attorney-General, for the State.

WHITE, PRESIDING JUDGE. Ownership of the animal alleged in the indictment to have been stolen is averred to be in "some person who is to the grand jury unknown." A motion in arrest of judg-ment was made by defendant's counsel, based upon two grounds: 1. Because the indictment does not allege nor does the proof show

that the animal was an estray. 2. Because the evidence fails to show any possession of the animal by any one who could give or refuse consent to its taking.

The indictment was good. "That such an allegation of ownership is sufficient has been repeatedly held in our State, and is a rule well established by common law and elementary authorities. Property in the animal should be averred in the true owner, if known; and, if not known, the indictment should state that it was the property of some person to the jurors unknown." (*State* v. *Faucett*, 15 Texas, 584; *State* v. *Haws*, 41 Texas, 161; *Culberson* v. *The State*, 2 Texas Ct. App., 324; *Taylor* v. *The State*, 5 Texas Ct. App., 1; *Maddox* v. *The State*, 14 Texas Ct. App., 447; Willson's Crim. Forms, Nos. 491 and 492.) If the indictment avers that the owner was unknown, and the evidence shows that the animal was an estray, no presumption of ownership arises from defendant's possession, nor that such possession was lawful, but he must establish its legality. (*Wills* v. *The State*, 40 Texas, 69.)

Two other rules well established are: 1. That animals upon their accustomed range are in possession of the owner; and, 2d, that want of consent of the owner to the taking of the animal may be fully established by circumstantial evidence. (*Jones* v. *The State*, 3 Texas Ct. App., 498; *Crockett* v. *The State*, 5 Texas Ct. App., 526; *Wilson* v. *The State*, 45 Texas, 76; Clark's Crim. L. of Tex., p. 259, and note.)

There are in the record eleven bills of exceptions saved by defendant to rulings of the court mainly upon questions of evidence. Many of these bills are too indefinite in their statements of the matters complained of to apprise us so fully of the questions as that we can act intelligently upon them. The others do not present objections or questions deemed by us tenable or of sufficient importance to require discussion.

As to the charge, it is objected that it is defective in that it omits to instruct the jury upon the law relative to circumstantial evidence. The facts do not show a case purely of circumstantial evidence, and hence we cannot hold that the failure so to charge is reversible error.

We have found in the record no such error as requires a reversal of the judgment of the lower court in this case, and it is therefore affirmed.

*Affirmed.*